UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL CORWIN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

Hon. Gordon J. Quist

Case No. 1:18-cv-1373

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The

scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker

considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**BACKGROUND**

Plaintiff was 45 years of age on her alleged disability onset date. (PageID.251). She successfully completed high school and worked previously as a mail clerk. (PageID.60). Plaintiff applied for benefits on December 24, 2015, alleging that she had been disabled since June 15, 2015, due to Crohn's disease, supraventricular tachycardia, bone deficiency, colitis, migraines, liver, kidney, and ovarian cysts, depression, anxiety, sleeping difficulty, chronic fatigue, and a fatty liver. (PageID.251-61, 275).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.99-249). Following an administrative hearing, ALJ Donna Grit, in an opinion dated May 21, 2018, determined that Plaintiff did not qualify for disability benefits. (PageID.46-62, 68-97). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.32-37). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2018. (PageID.49). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the

Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff suffers from: (1) Crohn's disease/ulcerative colitis and (2) status-post thyroidectomy/thyroid cancer, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.49-52). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (2) she cannot climb ladders, ropes, or scaffolds; and (3) she cannot be exposed to extremes of heat, cold, or humidity. (PageID.52).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert. The vocational expert testified that there existed approximately 165,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.91-95). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

**I. Medical Evidence**

In addition to Plaintiff's statements and hearing testimony, the administrative record contained copies of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> The medical evidence of record does not reflect either the frequency or intensity of exacerbations from Crohn's disease that the claimant reported at the hearing. The claimant did not report the same degree of Crohn's disease difficulties to the gastroenterology specialists or to her primary care provider. The record does reveal increased difficulties with her previously well controlled Crohn's shortly after the thyroid cancer diagnosis in 2016. (Exhibit B13F/10, 25) The

regular use of medications, including new medications, appeared to improve and to control her symptoms (Exhibit B13F/25) with only occasional symptoms and weight gain, rather than weight loss. At the hearing, the claimant denied the improvement was anything other than [] temporary. The longitudinal record of treatment for Crohn's disease does not substantiate the claimant's report. Moreover, the claimant acknowledged that she does not use any protective undergarments, even when leaving home to go out in public to do shopping, for instance. The claimant reported that, twice daily, she has only a 60-second warning of needing to use the bathroom for a bowel movement. Even if the case is she has only 60 seconds, the claimant has managed to find a bathroom in a timely manner without the use of protective undergarments, which reflects an overall manageability or control of the Crohn's disease.

The medical evidence of record and the record as a whole does not support a conclusion that the claimant is disabled under the Social Security Act and Regulations at any time since the alleged onset date of June 15, 2015.

The claimant went to the emergency room on August 31, 2015 with complaints of dizziness and lightheadedness. A chest x-ray, to evaluate tachycardia, showed a normal heart size. There were no consolidations, pleural fluid, or bony abnormalities. There was no evidence of acute pulmonary disease. The diagnosis in the emergency room was supraventricular tachycardia. During the next few months, the claimant experienced a couple of other SVT events. The claimant did not take medications on a daily basis and the SVT has been largely stable. Echocardiogram ([E]KG) findings from September 3, 2015 showed a normal sinus rhythm as well as a normal axis and normal intervals (Exhibits B-2F/6-11 and B-3F/4-7).

On September 16, 2015, a chest x-ray showed no acute cardiopulmonary abnormality. The cardiomediastinal silhouette was within normal limits. There was no focal consolidation, pulmonary edema, pleural effusion, pneumothorax, or osseous abnormality (Exhibit B-2F/19).

On June 4, 2015, the review of systems findings indicated the claimant was feeling well. There was no report of dyspnea or chest pain upon exertion as well as no abdominal pain or a change in bowel habits. There were no neurological complaints. Objective findings

noted the claimant appeared well, was alert and oriented times three, and was in no acute distress. The chest was clear to auscultation with no wheezes, rales, or rhonchi. Air entry was symmetrical. The heart had a regular rate and rhythm, normal heart sounds [S1 and S2], and no murmurs, clicks, or gallops. The abdomen was soft, non-tender, and non-distended; there were no masses or organomegaly. Neurological findings noted the claimant was alert and oriented with no focal findings or movement disorder. Speech was normal. The extremities had normal peripheral pulses and no pedal edema, no clubbing, and no cyanosis (Exhibit B-6F/6).

On June 8, 2015, Shannon J. Todd, PA-C, noted the history of Crohn's with a history of a fatty liver with elevated liver function tests, which had returned to normal for the past several months. The liver ultrasound from 2014 noted a fatty liver but no cirrhosis. The claimant indicated having a transient right upper quadrant pain every few months. A recent colonoscopy had normal findings. The Crohn's was stable on the medication Imuran.

A computer tomography (CT) urogram study from September 2015 showed a stable hemangioma within the liver, a new lesion in the right lobe of the liver [with probability favoring a small cyst], cholelithiasis, hepatic steatosis, a stable right renal cyst, a left adnexal lesion [representing a fibroid or a prominent left ovary], and a probable left physiologic ovarian cyst. There were no renal stones or lesions suspicious for neoplastic disease. A September 8, 2015 echocardiography reported was essentially a normal study. The left ventricular ejection fraction was 60%. The right ventricular size, thickness, and function were normal. There was no pericardial effusion or pleural effusion (Exhibits B-1F/2-4, B-2F/19-21, and B-3F/13-14).

A chest x-ray from September 19, 2015 showed no acute cardiopulmonary abnormality. The cardiomediastinal silhouette was within normal limits. There was no focal consolidation, pulmonary edema, pleural effusion, or pneumothorax. Additionally, there was no osseous abnormality. The diagnosis was acute bronchitis (Exhibit B-6F/12-13).

A general office visit on December 22, 2015 indicated a diagnostic assessment of Crohn's disease with complication and an unspecified

gastrointestinal location as well as supraventricular tachycardia (SVT) (Exhibit B-6F/25-26).

A March 2016 consultative physical exam offered a conclusion of migraine without aura, a history of supraventricular tachycardia, and a history of Crohn's disease. The claimant was 70 inches tall and weighed 234 pounds. Heart findings did not indicate a click, murmur, or additional sound. The heart did not appear to be enlarged. The abdomen had some mild tenderness to palpation. There was no rebound or guarding noted. The abdominal contour was normal with no organomegaly, masses, or evidence of ascites. Bowel sounds were normal. Vascular findings of the March 2016 consultative physical exam indicated no clubbing or cyanosis of the extremities. Peripheral pulses were intact. There was no joint instability, enlargement, or effusion. Grip strength was intact and dexterity was not impaired. The claimant had no difficulty getting on and off the examination table, no difficulty heel and toe walking, and no difficulty squatting. Joints had a normal range of motion. Motor strength and function were normal. Sensory function remained intact. Reflexes were intact and symmetrical. The claimant performed finger-to-nose movements adequately (Exhibit B-7F).

In the spring of 2016, the claimant was diagnosed with thyroid cancer. Subsequently, she underwent a thyroidectomy surgery in May 2016 and radio-ablation treatment. There was no metastatic neoplasm found (Exhibits B-9F/5, 33-35, 56-58, 72-73, 80 and B-10F).

A chest x-ray taken on March 29, 2016 indicated no active disease (Exhibit B-9F/2).

On June 9, 2016, the claimant reported having three to four loose or formed stools daily. She had recently been treated in the emergency room for dehydration (Exhibit B-13F/10).

On September 9, 2016, a nuclear medicine total body scan showed no evidence of metastatic disease (Exhibit B-9F/5).

On December 12, 2016, physicians' assistant Todd indicated that the history of Crohn's disease was maintained on the medication Imuran. Laboratory tests indicated stable findings with macrocytosis as expected on Imuran. The claimant did continue to have bloating. She reported having three to four liquid to mushy stools per day as well as occasional fecal incontinence with urge. The

> claimant stated she was not using Imodium. She did report having a little blood in a bowel movement (noticed on toilet paper) one month ago with no blood with bowel movements after that. The claimant reported no fevers or chills. She did report having a poor appetite at times. There had been no weight loss (Exhibit B-13F/25).
>
> On December 23, 2016, a small bowel study showed multiple abnormalities of the distal small bowel, which were concerning for active Crohn's disease (Exhibits B-9F/61 and B-11F/35-38).
>
> On January 3, 2017, an ultrasound of the thyroid indicated the status-post thyroidectomy. There were some bilateral borderline enlarged level five lymph nodes measuring seven millimeters in short axis (Exhibit B-9F/67).
>
> On January 31, 2017, a magnetic resonance image (MRI) of the abdomen and pelvis showed diffuse fatty infiltration of the liver. The bowel loop showed ileocolic anastomosis in the left lower abdomen. Again, the terminal 20 centimeters of the ileum showed diffuse mild narrowing and mild wall thickening without surrounding inflammation similar to the small bowel follow-through. There was no obstruction (Exhibit B-9F/62-63).
>
> On April 15, 2017, the claimant underwent a magnetic resonance image (MRI) of the brain in order to evaluate headaches. The MRI demonstrated no evidence of intracranial mass lesions, hemorrhages, or acute ischemic changes (Exhibit B-9F/113). The claimant received treatment in the emergency room on March 29, 2017 for a migraine headache.
>
> On June 1, 2017, an ultrasound of the right upper quadrant of the abdomen indicated severe hepatic steatosis (Exhibit B-9F/111-112).
>
> On June 12, 2017, CT findings of the neck showed no evidence of a subjacent mass at the region of a palpable abnormality. Post-operative changes were related to the thyroidectomy. There was no lymphadenopathy by size criteria (Exhibit B-9F/29-30).
>
> A January 2018 laboratory test indicated that the claimant's Remicade level was good. There were no antibodies found (Exhibit B-14F/3).

(PageID.54-57).

**II. Medical Opinion Evidence**

On December 22, 2015, Dr. Brian Phillips completed a report regarding Plaintiff's ability to perform physical activities. (PageID.420-23). The doctor reported that Plaintiff was limited to a greater extent than the ALJ recognized. For example, the doctor reported that during an 8-hour workday, Plaintiff can stand/walk for less than two hours and sit for "about" two hours. (PageID.422). The doctor reported that Plaintiff required a sit/stand option and could only occasionally lift or carry any weight. (PageID.422). The ALJ afforded only "partial weight" to Dr. Phillips' opinion. (PageID.57-58). Plaintiff argues that she is entitled to relief because the ALJ failed to afford appropriate weight to the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment

relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In support of her position, Plaintiff advances two arguments, neither of which are persuasive. First, Plaintiff faults the ALJ for highlighting an internal inconsistency in Dr. Phillips' opinion. The doctor reported that Plaintiff needed to periodically walk throughout the workday. (PageID.422). Specifically, the doctor reported that every ten minutes, Plaintiff "must" walk for ten minutes. (PageID.422). As the ALJ observed, this would require Plaintiff to spend approximately half the workday walking. (PageID.58). As the ALJ further observed, this is inconsistent with the doctor's assertion that during an 8-hour workday, Plaintiff can stand/walk for "less than 2 hours." (PageID.58, 422). Plaintiff argues that the ALJ erred by finding the doctor's statements to be conflict. The Court disagrees as the inherent contradiction in the competing statements is obvious. Accordingly, this argument is rejected.

Plaintiff next argues that the ALJ's reliance on boilerplate language fails to permit meaningful review of the ALJ's analysis. Specifically, Plaintiff points to the following statement by the ALJ:

> As for the opinion evidence, I assign partial weight to the December 22, 2015 opinion of treating physician Brian Phillips, MD, in Exhibit 5F, because of the supportability and consistency of the opinion with the record as a whole. The opinion is not supported or consistent with substantial other evidence [SSR 96-2p].

(PageID.57).

Plaintiff is correct that this language is vague and fails to articulate the reasons why the ALJ discounted Dr. Phillips' opinion. Were this the totality of the ALJ's analysis, Plaintiff might very well be entitled to relief. But, immediately following the language quoted above, the ALJ discussed at length the specific reasons why she discounted the doctor's opinion. (PageID.57-58). The ALJ's assessment in this regard is supported by substantial evidence. This argument is, therefore, rejected.

**CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 10, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge